UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
ESSIE BROWN,                            )         No. C09-1498RSL
                                        )
                Plaintiff,              )
        v.                              )         ORDER GRANTING DEFENDANTS'
                                        )         MOTION FOR SUMMARY
UNIVERSITY OF WASHINGTON, *et al.*,     )         JUDGMENT
                                        )
                Defendants.             )
_____)

This matter comes before the Court on "Defendants Harborview Medical Center, University of Washington, and David Ferrulli's Motion for Summary Judgment." Dkt. # 44. Plaintiff has asserted claims of race discrimination under Title VII and § 1981 of the Civil Rights Act of 1964, age discrimination under the Age Discrimination in Employment Act ("ADEA"), and retaliation in violation of the Family Medical Leave Act ("FMLA"). First Amended Complaint (Dkt. # 2) at 7-9.[1] Defendants seek judgment as a matter of law on all of plaintiff's claims.

Summary judgment is appropriate when, viewing the facts in the light most

---

[1] Plaintiff has dismissed her state and common law claims as well as all claims against defendant SEIU District 1199. Dkt. # 37 and Dkt. # 40. Plaintiff also concedes that there is insufficient evidence to support her disparate impact claim. Dkt. # 56 at 25. Although plaintiff presents argument regarding a claim of retaliation under Title VII, no such claim was asserted in the First Amended Complaint and it cannot be raised for the first time in response to defendants' motion for summary judgment.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

**A. RACE AND AGE DISCRIMINATION**

Because plaintiff has not identified any explicit statement or conduct from which

---

[2] The Court has not considered unsupported conclusory allegations (such as "Ferrulli[] has openly admitted to regular use of racial slurs" (Motion at 1)) or statements for which plaintiff has not identified an admissible source for her knowledge (such as "the employer hired a younger person (with less experience and not of the protected class) to fill my position" (Decl. of Essie Brown (Dkt. # 56) at ¶ 2.5)).

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -2-

one could conclude that Ms. Brown's race or age motivated defendants' behavior in this case,[3] her claims of intentional discrimination rely on inferences and are subject to the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004) (noting alternative means by which discriminatory intent can be shown).[4] In order to raise an inference of discrimination, plaintiff must show that (1) she is a member of one or more protected classes, (2) she was satisfactorily performing her job, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not in the protected class were treated more favorably. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993) (citing McDonnell Douglas, 411 U.S. at 802). Plaintiff's initial burden is to show that defendants' conduct, if left unexplained, gives rise to an inference that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978) (quoting Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324, 358 (1977)). If the elements of the

---

[3] The only racially-tinged comment attributed to defendants occurred in 1998. According to plaintiff, defendant Ferrulli, plaintiff, and a patient were in trauma when Ferrulli said something to the effect of, "I've been a tech since '78. My goodness." Plaintiff did not appreciate the remark:

> We both were probably around the same age and probably have the same experience, and I just let him take charge because he's the lead and I just follow his lead, but he would make it seem like I didn't know anything, like I just, you know, got there yesterday. And so he threw all of this in front of the patient, and I don't say nothing, but when the patient left, I asked him why, and I told him, "Why do you have to belittle me in front of a patient or make me feel as though, you know, I'm under you?" I say, "We are equals," you know, and I asked him not to do it again. And then he'd go, "What is this? A black thing?" Well, you know, that's just David's personality and --

Decl. of Chad Arceneaux (Dkt. # 56), Ex. 1 at 238-39. This conversation occurred twelve years before plaintiff was terminated, was unrelated to the adverse employment decision of which plaintiff complains, and is ambiguous as an indicator of discriminatory intent.

[4] An age discrimination case alleging disparate treatment, such as this one, involves the same shifting burdens of proof as a Title VII claim. See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990).

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -3-

*prima facie* showing are satisfied, plaintiff is entitled to a presumption that the employer unlawfully discriminated against her.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

Once a *prima facie* case has been presented, the burden shifts to defendants "to articulate a legitimate nondiscriminatory reason for [their] employment decision."  Wallis, 26 F.3d at 889.  If defendants are able to rebut the presumption of discrimination raised by the *prima facie* showing, plaintiff may avoid summary judgment by producing enough evidence to allow a reasonable factfinder to conclude either (1) that defendants' proffered reasons for the adverse employment action were false or (2) that the true reasons for the action were discriminatory in nature.  Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

It is undisputed that plaintiff is a member of one or more protected classes and that she suffered an adverse employment action.  Whether plaintiff has made a *prima facie* showing that she was performing her duties satisfactorily and that similarly situated individuals outside her protected classes were treated more favorably is doubtful:  her evidence regarding these two elements is contested, inadmissible, and/or unpersuasive.  For purposes of the first step of the McDonnell Douglas analysis, however, the Court will assume that plaintiff satisfies all four elements of the *prima facie* case, giving rise to a presumption that defendants unlawfully discriminated against her.

Defendants, however, have come forward with evidence showing that plaintiff had serious performance problems for a number of years prior to her termination, that she was unwilling to acknowledge these problems and therefore unable to correct them, and that plaintiff's continuing failure to meet performance expectations led to her termination.  Under the shifting burdens of McDonnell Douglas, the presumption of discrimination drops out of the case

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT             -4-

at this point, and plaintiff must come forward with enough evidence to allow a reasonable factfinder to conclude either (1) that defendants' proffered reasons for the adverse employment action were false or (2) that the true reasons for the action were discriminatory in nature.

Plaintiff argues that her technical abilities and patient care have never been questioned and that complaints regarding her interactions with co-workers and students are simply inaccurate. Plaintiff's steadfast belief that her interpersonal skills were satisfactory is belied by the record. One of the skills expressly required of a radiology imaging technologist is that they must have the "[p]roven interpersonal and communication skills required to promote positive relationships with patients, visitors, radiologists, and other medical center personnel." Decl. of Jayne L. Freeman (Dkt. # 45) at 93. In 2003, 2004, and 2005, plaintiff's annual performance reviews included statements regarding plaintiff's need to improve her interpersonal skills and her relationships with co-workers. Id. at 76, 79, and 81. In response to her 2003 evaluation, plaintiff noted that the same complaint had been raised "for the last 2-3 evaluations." Id. at 76. In 2007, plaintiff's interpersonal skills were again called into question, and her only performance goal for the upcoming year was to "work on interpersonal relationships." Id. at 83-84. When co-workers and visiting students subsequently complained that plaintiff had yelled at and/or been rude to them, plaintiff's supervisor, defendant Ferrulli, initiated the three-step disciplinary process that ultimately resulted in plaintiff's termination. Throughout the process, plaintiff refused to consider the possibility that her behavior was causing offense, and she therefore refused to take any steps to alter or modify her communication style. Supp. Decl. of Essie Brown (Dkt. # 56), Ex. 5 ("I had no idea that I was hired for all people to like me. I have no control over who likes me or don't like me. I feel people should like themselves first and do the job that they were hired to do."); Ex. 19 ("Ms. Brown fails to take responsibility of her actions and continues to behave in a manner inconsistent with prior counseling sessions. Ms. Brown's behavior is causing a negative impact on the department and she does not appear to have made any effort to improve it."). In addition, plaintiff sought out and questioned people

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -5-

who had complained about her behavior despite having been specifically warned against such a practice. Based on this record, the Court finds that plaintiff has failed to show that defendants' justification for the adverse employment action was false.

Plaintiff also argues that her alleged performance problems were merely a pretext for her termination and that the real reason was race and/or age discrimination. In support, plaintiff notes that the complaints against her involved "the most trivial workplace gripes" (Response at 10), that her supervisor improperly rejected plaintiff's request for union representation during the first stage of the progressive discipline process, that the complaints were not properly investigated, and that similarly situated co-workers were treated differently. Plaintiff offers nothing but her own subjective beliefs in support of the first, third, and fourth arguments.

As discussed above, plaintiff's interactions with co-workers and students prompted complaints and counseling over a period of years: although plaintiff may wish to characterize these interactions as trivial, they were significant enough that her co-workers complained and her supervisors attempted to intervene. When complaints were made, statements were generally taken from both parties and any percipient witnesses. Plaintiff has not identified any witnesses who would have supported her version of events if approached, not has she raised a genuine issue regarding the appropriateness of defendants' investigation. The fact that plaintiff challenged the complainants' veracity does not suggest that the investigation was insufficient: plaintiff regularly charged co-workers with falsifying complaints even when there were witnesses who supported the complainant. At some point, plaintiff's history of interpersonal problems – and repeated denials of any inappropriate behavior – would begin to weigh against plaintiff in the evaluation of these recurring disputes.

Nor has plaintiff raised a genuine issue of material fact that similarly-situated employees outside the protected classes were treated more favorably. In her declaration, plaintiff asserts that Caucasian and/or younger co-workers (a) have had "words" with students

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -6-

1  and fellow employees, (b) come in late, perform non-work related activities on company time,
2  and/or violate patient privacy laws, (c) use profanity and mistreat fellow workers, and
3  (d) dropped a patient on the floor, all without being subjected to the three-step disciplinary
4  process. Decl. of Essie Brown (Dkt. # 56) at ¶ 16. Other witnesses have also recounted
5  instances where Harborview employees used foul language, spoke in raised voices, or engaged
6  in conduct which could be characterized as rude. It is not clear whether plaintiff has personal
7  knowledge regarding any of the events and transgressions she recounts or whether the employer
8  discovered the alleged wrongs. Nor is there any reason to believe that she would know whether
9  these individuals received counseling or were disciplined as a result. Decl. of Jayne L. Freeman
10 (Dkt. # 45) at 32 (plaintiff acknowledges that she kept to herself and did not have access to co-
11 workers' personnel files to determine whether her alleged comparators were disciplined or
12 counseled). More importantly, plaintiff does not assert that any of the Caucasian co-workers
13 were the subject of written complaints, had been advised to remedy a performance problem in
14 their annual performance reviews, and/or had failed to take corrective action at any of the three
15 stages of the formal disciplinary process. The other witnesses generally distinguish between Ms.
16 Brown's behavior, which they deemed unacceptable, and that of other co-workers. See, e.g.,
17 Decl. of Chad Arceneaux (Dkt. # 56), Ex. 5 at 31-32. Where the type and severity of an alleged
18 offense is dissimilar, the employees are not similarly situated for purposes of the McDonnell
19 Douglas analysis. Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010).

20       Although defendant Ferrulli did reject plaintiff's request for union representation
21 during the first stage of the disciplinary process, this fact does not give rise to an inference of
22 intentional discrimination based on race or age. Until plaintiff made her request, Mr. Ferrulli
23 was unaware that the collective bargaining agreement granted union members the right to have a
24 representative present. In fact, the "Step A" process was, until 2007 considered an informal
25 counseling procedure that was not documented or grievable. Decl. of Pranika Laing (Dkt. # 51)
26 at ¶ 4. When Ms. Brown pointed out the error, the disciplinary process was reopened and the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT     -7-

"informal" counseling sessions were redone with proper representation.

At the third stage of the McDonnell Douglas analysis, plaintiff bears the burden of providing "specific, substantial evidence of pretext" in order to defeat the employer's motion for summary judgment. Cornwell v. Electra Cent. Credit Union, 493 F.3d 1018, 1029 (9th Cir. 2006). Plaintiff has not met her burden. Rather, the only reasonable inference from the record is that defendants acted without regard to plaintiff's race or age in responding to the complaints of co-workers and students. Ultimately, plaintiff had the power to avoid termination by acknowledging that there was a problem and making some effort to correct her behavior. Instead, her defensiveness and confrontations with complainants made matters even worse, resulting in her termination. Plaintiff has not shown that defendants' legitimate, non-discriminatory business justifications for terminating plaintiff's employment were a pretext for discrimination or that her protected status played any role in defendants' decision. Plaintiff's claims of intentional discrimination therefore fail as a matter of law.

**B. HOSTILE WORK ENVIRONMENT**

An employer who creates or tolerates a racially abusive work environment may, in some circumstances, alter the conditions of employment for minority employees in violation of both Title VII and 42 U.S.C. § 1981. See Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003). To prevail on her hostile work environment claim, plaintiff must prove that (1) she was subjected to verbal or physical conduct of a racial nature; (2) the conduct was unwelcome; and (3) the conduct was so severe or pervasive as to alter the conditions of employment and create an abusive environment. Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998). Plaintiff argues that criticism of her work, questions regarding her ability to succeed in training programs, comments regarding her housekeeping abilities, the characterization of plaintiff as aggressive, and targeting plaintiff for discipline created a hostile work environment. None of this conduct was of a racial nature or was remotely severe enough to alter the terms and conditions of plaintiff's employment. The hostile work environment claim fails as a matter of

law.

## C. FAMILY MEDICAL LEAVE ACT

Under the FMLA, it is "unlawful for an employer to interfere with, restrain, or deny the exercise of or attempt to exercise any [FMLA rights]." 29 U.S.C. § 2615(a)(1). In order to survive summary judgment, plaintiff must raise a genuine issue of fact regarding whether her FMLA leave constituted a negative factor in defendants' decision to terminate her employment. Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1122-25 (9th Cir. 2001). The record before the Court does not give rise to even an inference that plaintiff's FMLA leave was considered during the three-step disciplinary process. Plaintiff had been taking scheduled biannual leaves of absence for a number of years prior to her termination, as had a number of other radiology technologists. Although plaintiff argues that her negative performance reviews were suspiciously timed in that they invariably occurred within months of an FMLA-qualifying leave, this argument ignores the fact that plaintiff was always within three months of a protected leave. In such circumstances, the timing of plaintiff's reviews and/or the complaints levied against her do not suggest a causal connection between her FMLA leave and her termination.[5]

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED.[6] The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

---

[5] Although plaintiff repeatedly mentions that she had trouble gaining approval for her first FMLA absence in or around 2000, the threatened denial of an FMLA leave request (which did not actually happen) is in no way related to her termination in 2008.

[6] Because plaintiff's claims fail as a matter of law, the Court need not address defendants' service and immunity arguments.

1 | Dated this 1st day of December, 2010.

*MWT S Lasnik* (signature)
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -10-